**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA L. FAIN, | Case No. 1:22–cv–01257–SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On September 30, 2022, Plaintiff Tina L. Fain ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. BACKGROUND

Plaintiff was born on May 18, 1969, and has a high school education. (Administrative Record ("AR") 25, 318, 794.) Plaintiff filed a claim for SSI payments on April 23, 2020, alleging she became disabled on that date due to diabetes, hepatitis C, bipolar disorder, schizophrenia, depression, and a shoulder problem. (AR 14, 112, 125, 146, 317.)

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 11.)

A.     **Relevant Medical Evidence**[2]

An MRI of Plaintiff's thoracolumbar spine performed in June 2019 showed no vertebral fracture, no osteopenia or inflammatory changes, no significant degenerative changes or spondylosis, mild to moderate right convex thoracolumbar scoliosis, and no vertebral malalignment. (AR 491–92, 584.)

In August 2019, Plaintiff complained to pain specialist J.R. Grandhe, M.D., of radiating low back, midback, and neck pain. (AR 560–62.) Upon examination, Plaintiff had normal range of motion and muscle tone, but exhibited tenderness to her spine and facet joints, abnormal sensation along her lower extremities, reduced strength in her upper extremities, and positive straight leg raising tests bilaterally. (AR 560–62.) Dr. Grandhe prescribed her a TENS unit. (AR 562.)

Plaintiff received trigger point injections in her right shoulder and in her cervical spine from Dr. Grandhe in September 2019. (AR 565–68.) During an examination that month, Dr, Grandhe assessed Plaintiff with "chronic neck pain secondary to a motor vehicle accident during childhood and x-ray evidence of moderate degenerative disc disease at C6-7": right shoulder pain "likely due to frozen shoulder"; "right infrascapular neuralgia on clinical exam"; and "chronic low back pain with positive clinical exam findings for [lumbar degenerative disc disease] but with negative x-ray lumbar spine." (AR 564.)

In October 2019, Plaintiff received an additional round of injections in both shoulders and her cervical spine. (AR 569–73.) That same month, Plaintiff presented for a follow up appointment complaining of right shoulder pain due to a recent injury. (AR 457–59.) Upon examination, she exhibited decreased range of motion, tenderness, pain with maneuvers in all directions, and decreased strength. (AR 458.) No swelling, effusion or deformity were noted. (AR 458.) She was prescribed Percocet (oxycodone-acetaminophen) for pain. (AR 459.) An x-ray of Plaintiff's right shoulder performed that month was negative, showing no fracture, significant arthritic changes, or gross soft tissue abnormality. (AR 476–77, 588.)

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

Plaintiff reported in November 2019 that she had begun physical therapy for her right shoulder and had received an injection, but neither was helpful and the pain persisted. (AR 454.) Decreased range of motion and pain were observed in Plaintiff's right shoulder, but no tenderness. (AR 456.) The provider noted that Plaintiff's "acute pain has now become chronic," and referred her to an MRI. (AR 456.)

She received nerve blocks from Dr. Grandhe both shoulders that same month. (AR 574.) The nerve blocks provided pain relief for a week or two, but Plaintiff's pain level later returned to baseline. (AR 576.) Dr. Grandhe administered another round of nerve blocks and diagnosed Plaintiff with bilateral suprascapular neuritis and right cervical radiculopathy. (AR 576–78.)

In January 2020, Dr. Grandhe assessed Plaintiff with chronic neck pain with bilateral radiculopathy "with x-ray evidence of [degenerative disc disease] most notably at C5–C7"; bilateral suprascapular neuralgia; and cervical and bilateral shoulder myofascial pain syndrome. (AR 579.) Plaintiff received trigger point injections in her cervical spine. (AR 580–81.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 14, 2020, and again on reconsideration on December 28, 2020. (AR 146–51; AR 155–60.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 161–76.) The ALJ conducted a hearing on July 20, 2021. (AR 34–65.). Plaintiff appeared at the hearing with her counsel and testified. (AR 41–59.) A vocational expert also testified. (AR 59–64.)

**C.   The ALJ's Decision**

In a decision dated August 16, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 14–27.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 17–27.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 23, 2020, the application date (step one). (AR 17.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative joint disease of the left shoulder. (AR 17–19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19.)

The ALJ then assessed Plaintiff's RFC and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff retained the RFC:

> to perform medium work as defined in 20 [§] CFR 416.967(c) except can lift or carry occasionally 50 pounds, frequently 25; stand or walk for about 6 hours of an 8- hour workday; sit about 6 hours of an 8-hour workday. [Plaintiff] can push or pull with the bilateral upper extremities consistent with described lifting and carrying. [Plaintiff] can occasionally climb ladders, ropes, or scaffolding and frequently climb ramps or stairs. [Plaintiff] can frequently stoop, crouch, crawl, or kneel. With the left minor upper extremity, occasional overhead reaching

(AR 20–25.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 21.) The ALJ determined that Plaintiff had no past relevant work (step 4), and was not disabled because, given her RFC, she could perform a significant number of other jobs in the local and national economies, specifically patients transporter, dining room attendant, and machine packager (step 5). (AR 25–27.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 24, 2022. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.  LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only

unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

1989))). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff contends that the ALJ erred, *inter alia*, by finding Plaintiff's low back, right shoulder, and cervical spine impairments neither medically determinable nor severe, resulting in an incomplete RFC assessment. (Doc. 13 at 18–20.) The Court agrees, and will remand for further proceedings.

### A.     Legal Standard

At step two, the ALJ must determine if the claimant has a medically determinable impairment or combination of impairments that are severe, such that they would significantly limit the claimant's ability to perform basic work activities. *See Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 416.920(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921. A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An ALJ must consider all the evidence at step two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id*. § 416.20(a); *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

"An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The purpose of step two is to operate as "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step two finding is "merely a threshold determination" that "only raises a prima facie case of a disability."); *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) ("Step two is merely a

threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (internal citations omitted). The claimant retains the burden of proof at step two. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Absence of objective medical evidence may justify an adverse step two determination. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).

**B.    Analysis**

At step two, the ALJ determined Plaintiff's alleged low back, right shoulder, and cervical spine impairments were not medically determinable and not severe because "the record lacks the requisite objective medical evidence necessary to establish a medically determinable impairment." (AR 19 (citing 20 C.F.R. § 416.913(a) and 416.929(b).) This finding is not supported by substantial evidence in the record.

First, regarding Plaintiff's cervical spine impairment, the ALJ noted that while the medical record "mention[s] x-ray evidence of moderate degenerative disc disease of the C6-7," it "does not contain the actual x-ray imaging studies." (AR 19.) "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The absence of these x-ray results, of which the ALJ was on notice, should have suggested to the ALJ that the record was not adequate to allow for a proper review of Plaintiff's alleged cervical spine impairment, thus triggering the ALJ's duty to develop the record. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (the ALJ's duty to supplement the record is triggered if the record is inadequate to allow for proper evaluation of the evidence.); *Kerley v. Berryhill*, No. 2:16-cv-01841 JRC, 2017 WL 3128390, at *3 (W.D. Wash. July 24, 2017) (finding duty to develop the record was triggered when the ALJ was put on notice medical records evidencing a physical examination conducted by petitioner's treating physician resulting in a diagnosis of fibromyalgia were missing from the record). The ALJ's reliance on the absence of those results to support their conclusion is problematic, particularly when they could have been obtained readily. *See, e.g., Vargas v. Saul*, No. 1:19-CV-00299-CWD, 2020 WL 5521039, at *5 n.7 (D. Idaho Sept. 14, 2020) ("[T]he Court

finds fault with the ALJ's reliance upon the absence of the test results in the record to support his conclusion, when it was obvious they were missing and could have been easily requested.").

But even had the cervical x-ray results been in the record, the ALJ's evaluation of the "objective medical evidence" was too narrow. "Objective medical evidence" is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 416.913(a)(1). *See also* 20 C.F.R. § 416.929(b) ("Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged."). "Laboratory findings" means "one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques, including "chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X–rays), and psychological tests." 20 C.F.R. § 416.902(g). "Medical signs" are "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)," and they "must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 416.902(l).

Here, in finding Plaintiff's alleged low back, right shoulder, and cervical spine impairments were neither medically determinable nor severe, the ALJ focused solely on "laboratory findings," *i.e.*, x-ray studies, and improperly ignored the "medical signs" evidence in the record. (*See* AR 18.) The ALJ's decision makes no mention, much less discussion, of the clinical diagnostic examinations performed both prior to and after the x-rays, showing decreased range of motion, tenderness, pain with maneuvers in all directions, and decreased strength in Plaintiff's right shoulder; and tenderness to Plaintiff's spine and facet joints, trigger points in her cervical and lumbar spine with taut bands and jump signs, abnormal sensation along her lower extremities, reduced strength in her upper extremities, positive Gaenslen's and Patrick's signs, and positive straight leg raising tests bilaterally. (AR 456, 458, 560–62). There is also no mention or discussion of the medical signs of Plaintiff's low back, right shoulder, and cervical spine impairments that were observed by pain specialist Dr. Grandhe, including chronic neck

pain, right shoulder pain "likely due to frozen shoulder," "right infrascapular neuralgia on clinical exam," "chronic low back pain with positive clinical exam findings for [lumbar degenerative disc disease]," bilateral suprascapular neuritis/neuralgia, right cervical radiculopathy, and cervical and bilateral shoulder myofascial pain syndrome.  (AR 564, 576–78, 579, 580–81.)   The ALJ's conclusion that these impairments were neither medically determinable nor severe was therefore based on an incomplete, and therefore inadequate, discussion of the objective medical evidence. 20 C.F.R. §§ 416.913(a)(1), 416.929(b).  *See Reddick v. Chater*, 157 F.3d 715, 722–23 (9th Cir. 1998) (An ALJ may not "cherry pick" from a record to support the conclusion, but rather must account for the context of the whole record.); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.).  *See also Shah v. Comm'r of Soc. Sec.*, No. 2:19-CV-1184-KJN, 2020 WL 2992121, at *3 (E.D. Cal. June 4, 2020) ("[T]he ALJ's scant analysis of plaintiff's PTSD at Step Two ignores the large amount of data indicating the impairment is something beyond a 'slight abnormality.'").

The errors discussed above are harmful because it does not appear that Plaintiff's low back, right shoulder, and cervical spine impairments were considered when determining her RFC. *Cf. Buck,* 869 F.3d at 1049.  Here, in contrast to *Buck*, the ALJ failed to acknowledge these impairments beyond the assessment at step two (except only to point out that state agency doctors appear mistakenly to have found only right shoulder limitations (and no left shoulder limitations) when the record supported left shoulder impairments, *see* AR 22).  As the ALJ did not mention Plaintiff's low back, right shoulder, and cervical spine impairments at any of the subsequent steps, they apparently rejected them in their determination of the RFC.  *See, e.g., Concepcion J. v. Comm'r of Soc. Sec.*, No. 1:19-CV-3070-RMP, 2020 WL 13505037, at *9 (E.D. Wash. Apr. 6, 2020).  Yet the ALJ did not set forth any reason for rejecting evidence relevant to Plaintiff's RFC.  Because of this, the Court "cannot determine whether [this] error was harmless . . . and therefore [does] not know whether the ALJ's omission was 'inconsequential to the ultimate nondisability determination.'"  *Black v. Astrue*, 472 F. App'x 491, 493 (9th Cir. 2012) (quoting

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

"Failure to provide reasoning that allows this Court to evaluate whether an error was harmless is an appropriate reason for this Court to remand to the ALJ." *Concepcion J.*, 2020 WL 13505037, at *9 (citing *Black*, 472 F. App'x. at 493). *See also Carson v. Comm'r of Soc. Sec.*, No. 1:21-CV-00508-EPG, 2023 WL 4209750, at *3 (E.D. Cal. June 27, 2023) (remanding where it did "not appear that the ALJ specifically addressed symptoms related to cervical spine disease when determining Plaintiff's RFC, and the ALJ's earlier determination that the impairment was not severe may have limited the evaluation at this step as well"); *Morton v. Colvin*, No. 2:15-CV-34-RMP, 2016 WL 1089264, at *6 (E.D. Wash. Mar. 18, 2016) ("The Court finds that remand for further proceedings is appropriate to allow the Commissioner to make the appropriate findings at step two."). On remand, the ALJ shall develop the record and address what, if any, additional limitations should be added to the RFC regarding Plaintiff's low back, right shoulder, and cervical spine impairments, and whether any change to the RFC affects the ALJ's ultimate decision regarding disability.[3]

## V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Tina L. Fain and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

---

[3] Because further proceedings are required, the Court does not reach Plaintiff's additional assertions of error directed to the medical opinion evidence and subjective symptom testimony. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

It bears noting, however, that the Court is inclined to agree with Plaintiff that her treatment, which included injections, nerve blocks, and opioid medications (*see* AR 459, 565–81), cannot properly be characterized as "conservative" within the meaning of Ninth Circuit jurisprudence. *See, e.g., Carlos M. A. v. Kijakazi*, No. ED CV 22-0038-E, 2022 WL 16894847, at *3 (C.D. Cal. July 11, 2022) (collecting cases).

IT IS SO ORDERED.

Dated:  **November 6, 2023**                         /s/ *Sheila K. Oberto*                    .
UNITED STATES MAGISTRATE JUDGE